FILED

2016 May-20  PM 02:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | | |
|---|---|---|
| METROPOLITAN PROPERTY & CASUALTY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 4:15-cv-01244-JEO |
| DONALD E. BUTLER, et al., | ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

In this diversity action, Plaintiff Metropolitan Property and Casualty Company

("Metropolitan") seeks a declaratory judgment against Defendants Donald E. Butler ("Butler"),

Donnetta Ogle ("Donnetta"), Jamie Ogle, Trent Ogle, Dakota Ogle and Kira Ogle (collectively

"Defendants") as it relates to coverage under a homeowner's policy issued by Metropolitan.  (*See*

Docs.[1] 1, 3, and 23).  The action is assigned to the undersigned United States Magistrate Judge

pursuant to this court's general order of reference dated January 1, 2015, and the parties have

consented to an exercise of plenary jurisdiction under 28 U.S.C. § 636(c).  (Doc. 14).  Pending

before the court is Defendants' motion to dismiss for lack of subject-matter jurisdiction, filed

pursuant to FED. R. CIV. P. 12(b)(1).  (Doc. 10).  The court has also issued an order requiring

Metropolitan to show cause why the court, even if might possesses subject matter jurisdiction,

---

[1]Citations to "Doc(s). ___" are to the document number(s) of the pleadings, motions, and other materials in the court file, as compiled and enumerated on the docket sheet by the clerk. Where applicable, pinpoint citations will be to the paragraph number(s) on the identified document.  By contrast, pinpoint page citations are to the page of the electronically filed document in the court's CM/ECF system, which may not correspond to the pagination on the original "hard copy" presented for filing.

should not dismiss the action based on the abstention principles articulated in *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328 (11th Cir. 2005), in light of a parallel civil action that Butler and Donnetta have filed against Metropolitan and two of its agents or employees in Alabama state court.  (Doc. 28).  Metropolitan has responded to that show cause order (Doc. 29), and Defendants have filed a reply thereto.  (Doc. 30).  Upon consideration, the court concludes that abstention is warranted under *Ameritas* and that this case is therefore due to be dismissed without prejudice.  Defendants' pending motion to dismiss for lack of jurisdiction will be deemed moot.

## I.

On October 19, 2014, a fire occurred at a dwelling owned by Butler in Opelika, Alabama, in Lee County (the "Opelika Property").  (Doc. 23 ¶ 13).  The Opelika Property was insured under a homeowner's policy issued to Butler by Metropolitan.  (Doc. 3-1, the "Opelika Policy").  Following the fire, Butler submitted a claim under the Opelika Policy, seeking the policy limits of $380,630.00.  (Doc. 23 ¶¶ 13, 15).  In a letter dated May 20, 2015, Metropolitan denied the claim.  (*Id.* ¶ 27; Doc. 11-4).  Metropolitan advised it was doing so for four reasons.  (Doc. 11-4). First, Metropolitan said that, under its interpretation of the policy, for a loss to be covered, the named insured, Butler, had to himself reside at the Opelika Property, but Metropolitan had determined that Butler was instead residing in Hokes Bluff, Alabama, in Etowah County, while the Opelika Property was being used as the residence of Butler's daughter Donnetta and her family, the Ogles.  (*Id.* at 1).  Second, Metropolitan asserted that Butler had failed to comply with conditions precedent spelled out in the Opelika Policy by failing to submit a properly completed proof of loss and inventory and supporting documentation.  (*Id.* at 1-2).  Third, Metropolitan maintained that any potential coverage for the Ogles' claim was contingent on Butler's actually

2

residing at the Opelika Property, and since he did not, Metropolitan said, any claim by the Ogles was also invalid.  (*Id.* at 2).  And finally, Metropolitan asserted that the claim was being denied because Donnetta had refused or otherwise failed to submit to an examination under oath, which was also a condition precedent under the policy.  (*Id.*)

On July 21, 2015, Davis Whittelsey, an attorney representing Butler and Donnetta, and who also represents Defendants in this court, sent an email to Metropolitan's lawyer, advising that he, Whittelsey, intended to file an action on behalf of Butler and Donnetta against Metropolitan in the Circuit Court of Lee County, Alabama.  (Doc. 11-8 at 2).  Whittelsey also attached a copy of a "rough draft" of the proposed state-court complaint, which asserted state law claims for breach of contract, bad faith, fraud, negligence, and wantonness against Metropolitan and two Alabama residents alleged to be its agents or employees.  (*Id.*)  Whittelsey concluded by advising that, since he intended to file his action by the close of business on Friday, July 24, 2015, should Metropolitan desire to make a final attempt to settle the dispute within policy limits, its counsel should contact him before then.  (*Id.*)

At 3:52 p.m. on July 24, 2015, with Butler and Donnetta's proposed state-court action still having yet to be filed, Metropolitan filed this action for a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., founding jurisdiction on the diversity statute, 28 U.S.C. § 1332.  (Doc. 1).  Metropolitan named as defendants both Butler and Donnetta, plus the latter's husband, Jamie Ogle, and their children.  In sum, Metropolitan seeks a judgment declaring that it owes no coverage for the fire loss under the Opelika Policy for the reasons stated in the denial letter of May 20, 2015.  (*Id.*)  Metropolitan has since filed an amended complaint on July 30, 2015, clarifying or otherwise correcting its initial pleading. (Doc. 3).  Metropolitan has also since filed its now-governing second amended complaint, after

the court advised it of deficiencies in Metropolitan's previous jurisdictional allegations. (*See* Docs. 22, 23).

On July 28, 2015, four days after the instant declaratory judgment action was commenced, Butler and Donnetta filed their lawsuit against Metropolitan in the Circuit Court of Lee County (the "State Court Action"). (Doc. 11-5). On October 1, 2015, they filed an amended or supplemental complaint in that proceeding. (Doc. 11-6). Butler and Donnetta there assert claims against not only Metropolitan but also its agent, Dena Hamilton; its "senior claim adjuster," Jason Palmer, both of whom are alleged to "reside" in Alabama; and various fictitious defendants. (Docs. 11-5 ¶¶ 4, 5, 6). Metropolitan, Hamilton, and Palmer will at times be referred to collectively as the "State Court Defendants."

In the State Court Action, Butler and Donnetta raise of host of claims, which all arise under Alabama law. (Docs. 11-5, 11-6). Those can be put into three general categories. First, Butler and Donnetta contend that Metropolitan is liable for both breach of contract (Doc. 11-5, Count I) and the tort of bad faith (*id.*, Counts II & III). Those claims stem from Metropolitan's refusal to pay, and its alleged failure to properly investigate, the claimed fire loss under the Opelika Policy.

Second, Butler and Donnetta claim that all three State Court Defendants are liable for various species of fraud. All three State Court Defendants are the subject of claims for fraudulent misrepresentation (Doc. 11-5, Count IV; Doc. 11-6 Count X), while Metropolitan and Hamilton are alleged also liable for fraudulent suppression (Doc. 11-6, Count XI) and "fraudulent deceit." (*Id.*, Count XII). In the third category, the State Court Defendants are alleged to be liable for negligence (Doc. 11-5, Counts V, VII; Doc. 11-6, Count VIII) and wantonness (Doc. 11-5, Count VI; Doc. 11-6, Count IX). The claims against and involving

4

Hamilton (and for which Metropolitan is also alleged to be liable) are based on statements and recommendations she ostensibly made in relation to Butler's purchase of the Opelika Policy. To wit, Butler and Donnetta claim that Hamilton, as Metropolitan's agent, sold Butler not one Metropolitan homeowners policy but two. She sold him the first, they say, in about 2007 to cover his "primary residence" in Hokes Bluff (the "Hokes Bluff Policy") and then convinced him in about February 2012 also to buy the substantially identical Opelika Policy to cover the Opelika property. (*See* Doc. 11-6 ¶¶ 2-9). Hamilton did so, Butler and Donnetta allege, by telling one "and/or" both of them that the Opelika Policy would provide full insurance coverage for the Opelika premises and that it was the only insurance they needed to do so. (*Id.* ¶ 8). And in making such statements, Butler and Donnetta maintain, Hamilton (and Metropolitan) knew or should have known, among other things, that Butler had been, and intended to continue, using the Hokes Bluff premises as his primary residence; that the Hokes Bluff Policy had continued to be renewed annually and remained in force at all times relevant; and that while the Opelika premises had been purchased by Butler, they were, in fact, being used by the Ogles as their primary residence and merely as an "additional or second residence" by Butler. (*See* Doc. 11-5 ¶¶ 15, 19). In turn, Butler and Donnetta's claims against and involving Palmer (and for which Metropolitan is, again, also alleged to be liable) arise out of his adjusting the claim on behalf of Metropolitan. In this vein, Butler and Donnetta contend that Palmer "failed to conduct an appropriate investigation," and they seem to claim or suggest he made the decision to deny the claim. (Doc. 11-5 ¶ 50). They also assert that, following the fire, Palmer misrepresented to Donnetta "and/or" Butler that the losses suffered by them and Donnetta's family were covered under Opelika Policy and that Metropolitan would pay Donnetta's loss of use of the premises. (Doc. 11-6 ¶ 18). Finally, Metropolitan itself is also alleged to have been negligent in its hiring,

5

training, and supervision of Hamilton and Palmer.  (Doc. 11-5, Count VII).

Meanwhile, on October 8, 2015, Defendants moved to dismiss this declaratory judgment action for lack of subject-matter jurisdiction under FED. R. CIV. P.  12(b)(1).  (Doc. 10).  In support, Defendants propose that when their responsive pleading is due, they would also file counterclaims against Metropolitan and claims against Hamilton and Palmer, essentially the same claims that Butler and Donnetta have raised in the State-Court Action.  (Doc. 11 at 6-7). And because Hamilton and Palmer are, like Defendants, Alabama citizens, their presence in the action, Defendants maintain, would destroy complete diversity, divesting this court of jurisdiction.  (*Id.*)  Defendants further assert, either additionally or in alternatively, that even if this court might have the authority to exercise supplemental jurisdiction over claims against Hamilton and/or Palmer under 28 U.S.C. § 1367, the court should decline to do so.  (*Id.* at 7-10). Metropolitan has opposed that motion to dismiss, first arguing that it is premature as a procedural matter given that Defendants have yet actually to assert any claims against the non-diverse parties, Hamilton and Palmer.  (Doc. 16 at 1-2).   In the alternative, Metropolitan contends on the merits that dismissal is unwarranted because, Metropolitan posits, supplemental jurisdiction extends in any event to Defendants' proposed claims against Hamilton and Palmer (*id.* at 2-6), to the extent that Defendants might state viable claims against them at all under Alabama law.  (*See id.* at 6-13).

On February 17, 2016, with Defendants' motion to dismiss pending, the court, acting *sua sponte*, issued an order requiring Metropolitan to show cause why this action should not be dismissed, even if subject-matter jurisdiction might continue to exist if Defendants amended to join non-diverse parties.  (Doc. 28).   In particular, the court indicated that it was contemplating exercising its discretion to abstain under *Ameritas* from hearing this declaratory judgment action

in light of the parallel State Court Action.  (*Id.*)  Metropolitan responded, arguing that, under the

facts of this case, the factors set forth in *Ameritas* do not counsel in favor abstention.  (Doc. 29).

Defendants filed a reply thereto, taking the contrary position.  (Doc. 30).

## II.

There is no dispute that, as it currently stands, this action, brought pursuant to the

Declaratory Judgment Act, comes within the court's subject-matter jurisdiction.  The diversity

statute gives the district courts original jurisdictions over civil actions that are (1) between

citizens of different States and (2) the amount in controversy exceeds $75,000, exclusive of

interests and costs.  28 U.S.C. § 1332(a)(1).  Metropolitan's latest pleading supports the

existence of both elements.  In it, Metropolitan states that it is a Rhode Island corporation with its

principal place of business in that same State, making it a Rhode Island citizen, *see* 28 U.S.C. §

1332(c)(1).  (Doc. 23 ¶ 1).  Metropolitan further alleges that all defendants in this action are

citizens of Alabama (*id.* ¶¶ 2-7), so those parties, which are the only ones now actually in the

action, are completely diverse.  And Metropolitan's denial of the fire loss claim, which sought

the limits of the Opelika Policy, $380,630.00, demonstrates the requisite amount in controversy.

(*See id.* ¶¶ 12, 15).

While federal district courts have a "virtually unflagging obligation" to exercise their

jurisdiction over actions that are traditionally considered to have been "at law," those courts have

discretion, jurisdiction notwithstanding, to abstain from and dismiss actions that are purely

equitable in nature, including those seeking a declaratory judgment.  *See Quackenbush v. Allstate

Ins. Co.*, 517 U.S. 706, 716-20 (1996); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995);

*Brillhart v. Excess Ins. Co. of Amer.,* 316 U.S. 491, 495 (1942); *Ameritas*, 411 F.3d at 1331-32.

Thus, "federal courts are more likely to abstain from hearing a declaratory judgment action based

on the standards articulated in [*Brillhart*], [*Wilton*], and their progeny than they are to abstain from hearing a coercive action based on the standards set forth in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), and its progeny." *New Hampshire Ins. Co. v. Hill*, 2012 WL 1598155, at *1 (S.D. Ala. May 7, 2012). "Under *Colorado River*, a district court may dismiss or stay an action where there is an ongoing parallel action in state court only in 'exceptional circumstances.'" *Id.* (citing *Moorer v. Demopolis Waterworks & Sewer Bd.*, 374 F.3d 994, 997 (11th Cir. 2004)). Courts may also apply abstention doctrine even if no party has urged the court to do so. *Bellotti v. Baird*, 428 U.S. 132, 143 n. 10 (1976); *BT Inv. Managers, Inc. v. Lewis*, 559 F.2d 950, 954 n. 16 (5th Cir. 1977)[2]; *Neumont v. Monroe Cty., Fla.*, 242 F. Supp. 2d 1265, 1283 (S.D. Fla. 2002).

The Eleventh Circuit has articulated the relevant analytical framework in this context in *Ameritas,* as follows:

> The Declaratory Judgment Act is "an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant." *Wilton* [*v. Seven Falls Co.*, 515 U.S. 277, 287 (1995)] (citations omitted). It only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so. *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494 (1942). In fact, in cases such as this, the Supreme Court has expressed that "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Id.* at 495. The Supreme Court has warned that "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Id.* This warning should be heeded.

> Guided by these general principles expressed by the Supreme Court, as well as "the same considerations of federalism, efficiency, and comity that traditionally inform a federal court's discretionary decision whether to abstain

---

[2]The decisions of the former Fifth Circuit handed down before October 1, 1981 are binding in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

from exercising jurisdiction over state-law claims in the face of parallel litigation in the state courts," we provide the following factors for consideration to aid district courts in balancing state and federal interests.

(1)    the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;

(2)    whether the judgment in the federal declaratory action would settle the controversy;

(3)    whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;

(4)    whether the declaratory remedy is being used merely for the purpose of "procedural fencing" – that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable;

(5)    whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;

(6)    whether there is an alternative remedy that is better or more effective;

(7)    whether the underlying factual issues are important to an informed resolution of the case;

(8)    whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(9)    whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

Our list is neither absolute nor is any one factor controlling; these are merely guideposts in furtherance of the Supreme Court's admonitions in *Brillhart* and *Wilton*.

*Ameritas Variable Life Ins. Co.*, 411 F.3d at 1330-31 (footnotes omitted).

At the outset, Metropolitan seems to argue that this court should hear this declaratory judgment action, rather than abstain, in no small part because Metropolitan filed this action

before Butler and Donnetta filed the State Court Action and because Metropolitan also perfected service in this action first.  (Doc. 29 at 1-2).  These circumstances show, Metropolitan says, that Defendants "are attempting to 'forum shop' and make an 'end run' around this Court's jurisdiction."  (Doc. 29 at 2).   Metropolitan further emphasizes, citing Alabama's "abatement" statute, ALA. CODE § 6-5-440[3], and ALA. R. CIV. P. 13, that "to allow the defendants to proceed in their chosen forum based on Complaints filed after this suit also flies in the face of state law precluding such actions."  (Doc. 29 at 2 n. 2).  However, this line of argument is misguided.

While *Ameritas* authorizes a court contemplating abstention to consider whether *the party bringing the declaratory judgment action* has engaged in "procedural fencing" to secure a federal forum and a res judicata defense for a state-law claim of cause of action that might otherwise be non-removable, the case did not hint that the court should closely examine or be skeptical of the motives of a defendant in the declaratory judgment action who later files a parallel action for damages in state court.  Indeed, the Eleventh Circuit has recognized that the fact that an "action in state court was filed after the federal complaint," as had occurred in *Ameritas* itself, "is of no moment," *Triple S Ref. Corp. v. Mount Canaan Full Gospel Church*, 254 F. App'x 762, 763 (11th Cir. 2007),[4] and thus does not preclude abstention.  *See id.*; *Ameritas*, 411 F.3d at 1330-32;*Westchester Surplus Lines Ins. Co. v. Romar House Ass'n, Inc.*, 2008 WL 5412937, at *4-5 (S.D. Ala. Dec. 29, 2008); *see also, e.g., American Modern Select Ins. Co. v. Galanis*, 2012 WL

---

[3]ALA. CODE § 6-5-440 provides: "No plaintiff is entitled to prosecute two actions in the courts of this state at the same time for the same cause and against the same party. In such a case, the defendant may require the plaintiff to elect which he will prosecute, if commenced simultaneously, and the pendency of the former is a good defense to the latter if commenced at different times."

[4]Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

5426353, at *1 (N.D. Ala. Nov. 1, 2012).  Metropolitan has cited no authority to support that its having filed first is important, never mind dispositive.

Also, neither § 6-5-440 nor ALA. R. CIV. P. 13 plays any role in the abstention calculus in this context.  *See Westchester Surplus Lines Ins. Co.*, 2008 WL 5412937, at *4-5; *American Modern Select Ins. Co. v. Witherspoon*, 2012 WL 6554006, at *4 (S.D. Ala. Nov. 21, 2012), *report and recommendation adopted*, 2012 WL 6554111 (S.D. Ala. Dec. 13, 2012).  Federal courts sitting in diversity are bound to apply substantive state law, but procedural matters are controlled by federal law.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1260 (11th Cir. 2015); *Adams v. Laboratory Corp. of Amer.*, 760 F.3d 1322, 1328 n. 8 (11th Cir. 2014).  ALABAMA CODE § 6-5-440 is procedural in nature and thus does not apply in the federal courts.  *Rudd v. Branch Banking & Trust*, No. 2:13-cv-2016-JEO, at *18-20 (N.D. Ala. Nov. 11, 2014); *American Cas. Co. of Reading, Pa. v. Skilstaf, Inc.*, 695 F. Supp. 2d 1256, 1258-60 (M.D. Ala. 2010); *cf. Johnson v. Brown-Service Ins. Co.*, 307 So. 2d 518, 520 (Ala. 1974) (recognizing that federal law, not § 6-5-440, would not control whether a later-filed action in federal court would be subject to abatement, citing *Ermentrout v. Commonwealth Oil Co.*, 220 F.2d 527 (5th Cir. 1955)); *see also AXA Corp. Solutions v. Underwriters Reinsur. Corp.*, 347 F.3d 272, 276-78 (7th Cir. 2003) (holding that Illinois statute providing for abatement based on the pendency of another action between the same parties for the same cause is procedural for *Erie* purposes); *but see Central Reserve Life Ins. Co. v. Keifer*, 211 F.R.D. 445, 448 (S.D. Ala. 2002) (citing *Simmons v. Pulmosan Safety Equip. Corp.*, 471 F. Supp. 999, 1001 (S.D. Ala. 1979)).  Thus, federal

abstention doctrine is what matters here, not § 6-5-440.[5]  *See AXA Corp. Solutions*, 347 F.3d 272, 276-78 (holding that *Colorado River* abstention doctrine, not Illinois abatement statute, governed propriety of district court's dismissal in deference to concurrent state court proceeding). Similarly, ALA. R. CIV. P. 13, which specifies the circumstances in which a party may or must assert counterclaims and cross-claims in the Alabama state courts, is procedural as well, so it too is immaterial.  *Cf. Palm Beach Golf Ctr.-Boca, Inc.*, 781 F.3d at 1260 (the Federal Rules of Civil Procedure govern procedural matters in diversity cases); *Ameritas*, 411 F.3d at 1331 & n. 5 (recognizing that validity of district court's abstention ruling did not depend on whether that court might have exercised supplemental jurisdiction over non-diverse third-party litigants if the defendant were to try to join them pursuant to federal joinder rules).

What the court does deem especially significant is that the declaratory judgment sought by Metropolitan involves the identical coverage issues raised in the State Court Action and that the instant federal action might very well not resolve the entire controversy between the parties, potentially resulting in inefficient, piecemeal litigation and inconsistent judicial determinations.  For instance, if this court were to rule in Defendants' favor on the issue of coverage under the Opelika Policy, there might still remain, at a minimum, an outstanding issue

---

[5]It bears noting that even if § 6-5-440 were substantive, it still would not be relevant to the issue before the court.  On its face, the statute authorizes a court to dismiss an action pending before it on the ground that another action between the same parties on the same cause of action was filed earlier.  While Defendants are asking the court dismiss this action in favor of a parallel one filed in state court, they do not invoke § 6-5-440, which is natural given that this action was filed *first*.  As far as the court can tell, Metropolitan is calling upon some vague penumbra of § 6-5-440 as generally precluding dismissal of a first-filed action in favor of a later-filed one.  However, the language of the statute says nothing about such matters, nor does Metropolitan cite any authority to support of such an interpretation.  And, ultimately, as discussed in the text, abstention in this context does not depend upon whether on the federal declaratory judgment action or the parallel state court damages action was filed first.

12

to be litigated with regard to whether Metropolitan's denial of the insurance claim was in bad faith.  But even if Metropolitan were to prevail here on the coverage issue, that would still not necessarily resolve the entire controversy.  In particular, this court might grant a declaratory judgment to Metropolitan based upon its primary argument that there is no coverage under the Opelika Policy because the named insured, Butler, resided in Hokes Bluff, not at the Opelika property.  That disposition would presumably resolve any breach-of-contract and bad-faith claims against Metropolitan based on the Opelika Policy, but it would not necessarily resolve other outstanding fraud, negligence, and wantonness claims that have been raised in the State Court Action.  Metropolitan insists that such is not the case, because, it says, "any and all claims asserted ... in the state court action revolve solely around whether the [Opelika Policy] provides coverage for the loss in question."  (Doc. 29 at 3 (footnote omitted)).  "It is that key issue," Metropolitan continues, "that will settle the entire controversy between all parties who submitted claims under the [Opelika Policy]."  (*Id.*)  But that is clearly not so.  Again, if Metropolitan were to lose on its declaratory judgment claim as to coverage, a bad faith claim against it would still remain potentially viable.  Moreover, Butler and Donnetta have pled claims in the State Court Action founded on the proposition that, even if even if Metropolitan is *right* that the Opelika Policy does *not* cover the loss because the policy required Butler to "reside" at the Opelika property, then Metropolitan and its agent, Hamilton, are liable for fraud, negligence, and wantonness.  Under that theory, they allege Hamilton and Metropolitan knew or should have known (1) that Butler's primary residence was in Hokes Bluff, (2) that Hamilton had already sold Butler a Metropolitan homeowner's policy in 2007 to cover his Hokes Bluff residence, (3) that such policy had been annually renewed and remained in effect at all times relevant, and (4) that the Opelika Property was going to be the primary residence of Butler's daughter, Donnetta, and

13

her family, rather than of Butler himself.  In turn, Butler and Donnetta allege that, despite such actual or constructive knowledge, Hamilton made misstatements and improper recommendations to Butler in 2012 to the effect that the Opelika Policy was appropriate to cover the Opelika Property from loss even if the Ogles were residing at the Opelika Property and Butler, as the named insured, continued to have his primary residence in Hokes Bluff.  Those statements and recommendations by Hamilton, Butler and Donnetta allege, induced Butler to purchase the Opelika Policy, which did not provide coverage under those conditions, instead of another homeowner's policy that was appropriate to his needs.  Such fraud, negligence, and wantonness claims, the court concludes, present theories of liability that would not necessarily be resolved by a declaratory judgment on the coverage issue.

Metropolitan responds by arguing that those fraud, negligence, and wantonness and claims, as well as all others in the State Court Action based on the alleged conduct and statements of Hamilton and Palmer, are not viable under Alabama law.  Metropolitan argues, rather, that "the addition of the agent and the adjuster is merely an attempt on the part of [Butler and Donnetta] to preclude this court's jurisdiction by the addition of parties who are unnecessary to the proceeding and the resolution of the issues [in this declaratory judgment action]."  (Doc. 29 at 5).  At its heart, this argument boils down to a claim that both Hamilton and Palmer were fraudulently joined as defendants in the State Court Action to defeat removal, such that theories of liability based on their conduct should not be considered part of the controversy between the parties for purposes of abstention under *Ameritas*.  The court disagrees, however, that the circumstances here suggest fraudulent joinder or that the tort claims should be disregarded as forming part of the controversy between the parties, at least as it relates to the agent, Hamilton,

14

and claims based on her conduct.[6]

Alabama law provides that an insurance agent may be held liable in tort for wrongful procurement of insurance where the agent procured a policy, but was negligent or wanton and, as a result, that policy did not provide the "complete and adequate" coverage desired by the insured. *Bartlett v. Allstate Ins. Co.*, 2005 WL 2978323, at *2 (S.D. Ala. Nov. 7, 2005) (quoting *Crump v. Greer Brothers, Inc.*, 336 So. 2d 1091 (Ala. 1976)); *see also Henson v. Celtic Life Ins. Co.*, 621 So. 2d 1268, 1274 (Ala. 1993); *Thompson v. United Companies Lending Corp.*, 699 So. 2d 169, 175 (Ala. Civ. App. 1997); *Parrett v. Allstate Ins. Co.*, 2009 WL 1505510, at *2 (M.D. Ala. May 28, 2009) (rejecting claim of fraudulent joinder of agent alleged to be liable under Alabama law for negligent procurement of insurance). Likewise, an agent and an insurer may be liable under Alabama law based on the selling agent's misrepresentations to the insured related to the scope of coverage under the policy.[7] *See, e.g., Alfa Mut. Fire Ins. Co. v. Thomas*, 738 So. 2d 815, 819

---

[6]Because the court finds that the claims in the State Court Action founded on the conduct of Hamilton sufficiently demonstrate that this declaratory judgment action does not encompass the entire controversy between the parties, the court will not address Metropolitan's arguments related to the potential viability of claims based on the conduct of Palmer, the adjuster.

[7]Metropolitan argues that the fraud claims based on the conduct of Hamilton are invalid as a matter of law. In support, however, Metropolitan has cited only a single case, *United States Life Ins. Co. of Amer. v. Herring*, 2008 U.S. Dist. LEXIS 92808 (M.D. Ala. 2008), which Metropolitan characterizes as standing for the proposition that "claims regarding misrepresentation and omissions about the insurance policy's coverage do not constitute fraud." (Doc. 16 at 7-8). But *Herring* holds no such thing. To the contrary, that court recognized that, under Alabama law, "*representations* outside the contract terms can be a basis for tort claims," as where a misrepresentation or omission of a material fact occurs in the negotiating process, which induces the opposing party to enter into a contract. *United States v. Life Ins. Co. of Amer. in City of New York v. Herring*, 2008 WL 4925636, at *5-6 (M.D. Ala. Nov. 14, 2008) (citing *Exxon Mobil Corp. v. Alabama Dep't of Corr. & Natural Res.*, 986 So. 2d 1093, 1129-30 (Ala. 2007) (Lyons, J., concurring) (emphasis original)). As a result, the court recognized that the insured could possibly assert tort claims based on allegations that he entered into the contract based upon the insurer's representations or omissions occurring "antecedent to the contract." *Id.* at *6. To be sure, that claim was ultimately dismissed pursuant to FED. R. CIV. P. 12(b)(6). *Id.* But that

15

(Ala. 1999); *Allstate Ins. Co. v. Hilley*, 595 So. 2d 873, 876 (Ala. 1992); *see also Pensinger v. State Farm Fire & Cas. Co.*, 347 F. Supp. 2d 1101, 1106-07 (M.D. Ala. 2003) (rejecting insurer's argument that plaintiff had fraudulently joined agent, in light of allegations that agent misrepresented and suppressed information about policy that led them to believe that it would cover damage to their home and loss of use of home); *Barkley v. State Farm & Cas. Co.*, 2005 WL 1587796, at *4 (S.D. Ala. June 30, 2005) (rejecting claim of fraudulent joinder as to insurance agent because "it is unquestioned that under Alabama law an insurance agent may be found personally liable for misrepresentations, suppression of material facts and concealment in the sale of an insurance policy.").  Given the potential viability of tort claims based on Hamilton's conduct, the court concludes that those claims, which are not part of this federal action and would preclude removal of the State Court Action, are part and parcel of the controversy between the parties.  *See Westchester Surplus Lines Ins. Co.*, 2008 WL 5412937, at *4 n. 7, *9 (adopting magistrate judge's conclusion that rejected insurer's argument that similar claims raised by the insured against the selling agent in parallel state court action "are not genuinely part of any controversy" between the insurer and insured).  The fact that the entire controversy would not be resolved by a declaratory judgment by this court strongly favors abstention.

Metropolitan urges, however, that it is this court, not the state court, that is actually better positioned to resolve the entire controversy.  In support, Metropolitan emphasizes that the State Court Action is brought only by Butler and Donnetta, while this declaratory judgment action

---

was only because the insured was deemed to have failed to plead the facts of the underlying fraud with the particularity required by FED. R. CIV. P. 9(b), not because misrepresentations or omissions regarding a policy's coverage cannot form the basis of a fraud claim. *Id.*

16

includes not only them but also the rest of Donnetta's family who were residing at the Opelika Property when it burned down. Metropolitan further proposes that bad faith, fraud, negligence, and wantonness claims like those raised in the State Court Action could all be added as counterclaims or cross-claims in this action. And while Metropolitan admits that some of those counterclaims or cross-claims would be against non-diverse parties, thereby destroying complete diversity, Metropolitan argues that this court could still exercise supplemental jurisdiction over such claims pursuant to 28 U.S.C. § 1367.

The court finds none of these points persuasive. As it relates to the non-inclusion of other members of Donnetta's family in the State Court Action, the court would note that Butler is apparently the only named insured on the Opelika Policy and the only party to submit a sworn proof of loss to make a claim thereunder. Even insofar as Metropolitan might believe that its interests vis-á-vis claims by other members of Donnetta's family who are not parties to the State Court Action would not be adequately protected by a judgment against Butler and Donnetta in that proceeding, seeming privity notwithstanding, Metropolitan has offered no reason why it could not seek a declaratory judgment against additional family members in the state court. Metropolitan's arguments suggesting that other parties and counterclaims might be added to this federal action without destroying jurisdiction are no more convincing. First, neither Metropolitan nor this court can compel Defendants in this action to add additional claims or parties, which is the only way that this action could mirror the State Court Action. *See Ameritas*, 411 F.3d at 1331. Second, the state court undoubtedly possesses jurisdiction over all of the claims and parties to the controversy, while the ability of this court to continue to exercise supplemental jurisdiction over claims against non-diverse parties is subject to some uncertainty. That itself counsels in favor of abstention. As the Eleventh Circuit explained in *Ameritas*, even

17

if a district court might "appropriately exercise supplemental jurisdiction over non-diverse third-party litigants," where there is a parallel state court action that includes all parties to the dispute controlled by state law, "there is no need for a federal district court to reach out for expanded jurisdiction even were it permissible."  411 F.3d at 1331 n.5.

Also favoring abstention is that it appears Metropolitan attempted to engage in "'procedural fencing' – that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable." *Ameritas*, 411 F.3d at 1331.  The materials before the court suggest, and Metropolitan does not deny, that Metropolitan's counsel was aware on July 21, 2015, that counsel for Butler and Donnetta was planning on filing a complaint in state court on or about July 24, 2015, based on Metropolitan's refusal to pay the policy claim. Metropolitan was further aware that the proposed state court action would include contract and tort claims under only state law against Metropolitan, Hamilton, Palmer, with the latter two parties being non-diverse to Butler and Donnetta.  As a consequence, removal of the proposed state court action to federal court would generally be precluded, at least absent a showing of fraudulent joinder.  And on the day that Butler and Donnetta's counsel had advised Metropolitan he intended to file the proposed state court action, Metropolitan filed this action for a declaratory judgment.  Finally, following the filing of the State Court Action, Metropolitan has aggressively sought to stamp it out moving the state court to dismiss it by invoking Alabama's abatement statute, § 6-5-440, based on Metropolitan's having filed this federal action first.  These circumstances indicate that Metropolitan perceived it would benefit by winning a "race to the courthouse," with designs on heading off having the parties' insurance controversy resolved by the Alabama state courts.  Metropolitan's assertion that it is actually Defendants who have attempted to "make an 'end run' around this Court's jurisdiction by waiting until the declaratory

judgment action was filed and then filing their state court complaint" (Doc. 29 at 2), is wholly

implausible, revisionist history.  As one district court has explained:

> [The insurer's] act of responding to [a revelation that the insured plans to file suit]
> by quickly filing a declaratory judgment action of its own cannot reasonably be
> construed as anything other than an anticipatory filing.  While not dispositive, the
> fact that [the insurer] filed an anticipatory declaratory  judgment action to secure a
> federal forum immediately upon learning that [the insured] was planning a lawsuit
> of his own favors abstention.

*Lexington Ins. Co. v. Rolison*, 434 F. Supp. 2d 1228, 1240-41 (S.D. Ala. 2006); *see also*

*Progressive Specialty Ins. Co. v. Bailey*, 2006 WL 2091749, at *4 (S.D. Ala. July 25, 2006).

Finally, Alabama has a substantial interest in having the claims and issues decided in the

state courts, without interference or potentially conflicting decisions from this federal court.  All

issues arise under Alabama state law.  The broader controversy involves Alabama citizens on

both sides of the case and an insurance policy sold in Alabama.  It is true, as Metropolitan

emphasizes, that the coverage issue presented by its declaratory judgment complaint is not novel

or complex.  Nonetheless, "the desire of insurance companies ... to receive declarations in federal

court on matters of purely state law has no special call on the federal forum."  *Westchester*

*Surplus Lines Ins. Co.*, 2008 WL 5412937, at *2 (quoting *State Auto Ins. Co. v. Summy*, 234 F.3d

131, 136 (3rd Cir. 2000)).  A "federal court without a strong interest in the matter, deciding

exclusively state-law questions, could 'increase the friction between ... federal and state courts.'"

*Travelers Indem. Co. v. Plantation Oaks of Ala., Inc.*, 2009 WL 902484, at *4 (M.D. Ala. Mar.

31, 2009) (quoting *Ameritas*, 411 F.3d at 1331).  These factors also favor abstention.

### III.

Having weighed all of the "considerations of federalism, efficiency, and comity that

traditionally inform a federal court's discretionary decision whether to abstain from exercising

19

jurisdiction over state-law claims in the face of parallel litigation in the state courts" as spelled out in *Ameritas*, 411 F.3d at 1331, the court concludes that abstention is warranted here. Accordingly, this action is due to be dismissed without prejudice.  Defendants' motion to dismiss for lack of jurisdiction (Doc. 10) is moot.  A separate final order will be entered.

      **DONE**, this 20th day of May, 2016.

JOHN E. OTT
Chief United States Magistrate Judge